IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JONI COCKRILL § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | No. |
| § | JURY DEMANDED |
| METROPOLITAN NASHVILLE § | |
| BOARD OF PUBLIC EDUCATION; § | |
| and CANIDRA HENDERSON, in her § | |
| individual capacity, § | |
| § | |
| Defendants. § | |

## COMPLAINT

**COMES THE PLAINTIFF, JONI COCKRILL**, and files this Complaint against the Defendants, METROPOLITAN NASHVILLE BOARD OF PUBLIC EDUCATION, and CANIDRA HENDERSON, in her individual capacity. She shows:

### I.  PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff, Joni Cockrill, is a citizen and resident of Smyrna, Tennessee.

2.  Defendant, Metropolitan Nashville Board of Public Education, is an employer of more than fifteen persons, operating in Nashville, Davidson County, Tennessee, and it employed the Plaintiff. Defendant, Canidra Henderson, is a "person" (and school principal) residing within this judicial district who, acting under color of law, deprived Plaintiff of a Constitutional right as set forth hereinbelow.

3.  This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331; Section

504 of the Rehabilitation Act, 29 U.S.C. §794; the First Amendment rights under 42 U.S.C. §1983; and Title II of the Americans with Disabilities Act, 42 U.S.C. §12132. Venue is proper because the alleged acts in this lawsuit occurred in this judicial district and/or because the Defendant conducts business in this judicial district.

## II. FACTUAL BASES FOR SUIT

4. Cockrill was employed by Metropolitan Nashville Board of Public Education beginning in July of 1998 and at the Antioch Middle School beginning August 2002.

5. Cockrill worked as a licensed special education teacher to profoundly disabled special education students. These students were the beneficiaries of federal funding subject to Section 504 of the Rehabilitation Act and Title II of the ADA.

6. In 2011, a new principal, Dr. Canidra Henderson, was assigned to the Antioch Middle School.

7. During the 2011-2012 school year, Sonya Dobbs was the Special Education Coordinator.

### A. PROTECTED ACTIVITIES ARISING FROM THE NEEDS OF SPECIAL EDUCATION STUDENTS

8. On multiple occasions, beginning in 2011 and continuing to the present date, Cockrill reported that Metropolitan Nashville Board of Public Education was denying disabled children appropriate services, education and aides, and were also exposed to hazards. Such advocacy for the disabled, by Plaintiff, constitutes protected activity under Section 504 and the ADA, and involves matters of public concern under the First Amendment. Plaintiff's public concern included speaking as a private citizen for the needs of disabled children and it included, inter alia, the following:

a. In August of 2011, that medically fragile students, including ones with respiratory disorders and seizure disorders, were at risk due to mold in the classroom, and on special education equipment. Cockrill requested air quality testing and professional clean-up and eventually contacted OSHA, thereby complaining both inside and outside her department;

b. In August of 2011, that Metropolitan Nashville Board of Public Education was violating the Individual Education Plan (IEP) of a student who required special transportation (lift bus) and one-on-one assistance through an aid. Cockrill and the parent advocated for the child, with the child going without services for a protracted period;

c. In 2011 and into 2012, that Metropolitan Nashville Board of Public Education was purposefully neglecting to provide special education services to students, including a one-on-one assistant or ancillary attendant for a child. Metropolitan Nashville Board of Public Education challenged Plaintiff why an assistant was needed, and Plaintiff explained that it was a federal <u>requirement</u> in an IEP;

d. In April of 2012, that Metropolitan Nashville Board of Public Education was creating an unsafe environment and denying "FAPE" (free and appropriate public education) to students due to inadequate staffing for the needs of severely disabled students. For example, staffing was required for one student who spread her feces and menstrual blood while, simultaneously, another student required diapering and bathrooming. Such diapering and bathrooming required all of the other special needs children to exit their gym class so the aide could monitor them, too, while attending to the bathrooming needs of the others.

e. That Cockrill required assistance for her own safety with certain special needs children—e.g. violence, feces throwing, assault and battery;

f.  In April of 2012, that Cockrill was experiencing retaliation and harassment for her reports;

g.  In July of 2012, that students with disabilities lacked hot water, lacked ADA accessible bathrooms, appropriate changing table, and assistance with feeding and supervision;

h.  In August of 2012, that ADA bathroom accessibility was still lacking, and that inadequate staffing existed concerning known physical aggression (e.g. assaults on staff, assaults on other students, throwing objects, flipping desks) and how four students were in diapers and required additional supports for their own safety and needs;

i.  In August of 2012, and again in January 2013, that staff were having to change a student's diaper in the middle of the classroom for inadequate bathroom facilities and support;

j.  In August of 2012, that Cockrill had been assaulted, suffering an injury to her back (ruptured/herniated discs);

k.  In August of 2012, requests for honoring workplace restrictions from Cockrill's physician due to her injury;

l.  In August of 2012, requested a formal reassignment;

m.  In August of 2012, requesting and advocating for special education transportation services for students with such need;

n.  In January of 2013, reported Metropolitan Nashville Board of Public Education as being out of compliance with respect to student Individual Education Plan (IEP), leading to multiple assaults on staff;

o. In January of 2013, requesting assistance through two person CPI restraint-trained staff;

p. In January of 2013, requesting to have an IEP meeting with Metropolitan Nashville Board of Public Education, specifically including Henderson, to address student's physical aggression and Metropolitan Nashville Board of Public Education's non-compliance with student's IEPs;

q. On or about February 12, 2013, reported to the Director of Workplace Safety, Harold Finch that a student's 504 plan and IEP required a "2 person certified CPI staff" and how Metropolitan Nashville Board of Public Education was out of compliance. This, Cockrill reported, was an indifference that manifested itself in Cockrill being injured by the child. Cockrill's spine had already been injured once, then reinjured, and she feared another incident of violence if Metropolitan Nashville Board of Public Education remained out of compliance;

r. Cockrill requested protection of herself through reassignment, due to her injuries. Cockrill stated that she was making the request because she knew a number of positions were coming open and would be available;

s. In May 2013, denying all life skills students the right to participate in Field Day due to physical aggression of one student; and

t. In 2013, failing to provide students with a certified special education teacher while Cockrill was absent.

### B. RETALIATORY ACTS TAKEN (ADVERSE ACTIONS)

9. From 2011 to the present, Cockrill suffered a continuous pattern of retaliation by

Page 5

Case 3:13-cv-00587 Document 1 Filed 06/14/13 Page 5 of 10 PageID #: 5

Metropolitan Nashville Board of Public Education and Canidra Henderson, acting under the color of state law, to deprive Plaintiff of her rights secured by federal law. Pleading more specifically, Plaintiff's engagement in the aforementioned activities, protected by First Amendment, §504, and ADA, was met with retaliation[1] from Defendants which included, inter alia:

    a. Denial of Professional Development opportunities and training;

    b. Public reprimand and written discipline, unwarranted, relating to Cockrill's portfolios;

    c. In 2012, frequent, unannounced "observations" to intimidate, including 21 observations in 25 days, as well as on odd days such as TCAP testing, returning from a field trip, end-of school, during lunch breaks, and even on a day after the textbooks had been removed from classes by the school;

    d. Piling of work on Cockrill despite lack of appropriate help already;

    e. In 2012, placing Cockrill on a "Plan of Assistance," a/k/a "Intensive Assistance Plan" (IAP) even though inappropriate for Cockrill;[2] scoring Cockrill without observations and, then, observing her on the last ½ day of the school year and giving her a failing grade for that observation (a day without aides or even textbooks or any formal instruction);

    f. In 2012 and 2013, denial of transfer requests to open, available positions within the system for which Cockrill was most qualified and sought placement;

---

[1] "Retaliation" because Plaintiff engaged in constitutionally and statutorily protected activities, II (A); that adverse actions were taken against her that would deter a person of ordinary firmness, II (B); and that such adverse actions were in fact causally connected to the protected conduct.

[2] On or about July 17, 2012, Cockrill was granted a meeting with the Director of Employee Relations, Scott Lindsey, and the Director of Workplace Safety, Harold Finch, and a state investigator. Mr. Lindsey stated that he was involved in the creation of the IAP plan but that it was "never intended" for persons such as Cockrill.

Page 6

Case 3:13-cv-00587   Document 1   Filed 06/14/13   Page 6 of 10 PageID #: 6

g. In August 2012, and again in January 2013, requiring Cockrill to change a wheelchair-bound seventh grader in the classroom because the bathroom was not wheelchair accessible;

h. In August of 2012, deliberately refusing to provide adequate staff and leaving Cockrill vulnerable to foreseeable violence and an attack which caused ruptured and herniated discs;

i. In August of 2012, removal of an assistant assigned to help Cockrill during need times;

j. From August of 2012, refusing to honor Cockrill's medical restrictions for her injury;

k. Refusing to grant Cockrill a transfer to an open and available position;

l. In August of 2012, denying reassignment of Cockrill to an inclusion class (instead placing a less qualified teacher on a "transitional" license into the position) and retaining Cockrill in Life Skills without full assistant coverage, despite her injuries to date;

m. Being placed on inactive status through "IOD leave," instead of being placed in an active position despite Cockrill's repeated request to return to work;

n. Refusal by Cockrill's principal, Dr. Henderson, to reasonably interact with Cockrill;

o. In September of 2012, falsely accusing Cockrill of not leaving lesson plans for a substitute teacher when, in fact, Cockrill had left sub plans, sub folders, and weekly plans for the sub;

p. Denying Cockrill any inclusion positions (or other positions) that would

allow her to return to active duty;

  q. In January of 2013, again purposefully leaving Cockrill vulnerable to even further injuries, and neglecting to provide required supervision of students with known violent tendencies. This was done in violation of the student's IEP (requiring "2 person certified CPI staff"), resulting in Cockrill being placed in a headlock and assaulted by a student who struck her already-injured area—causing Plaintiff further injury; and

  r. Later in January of 2013, purposefully leaving Cockrill vulnerable yet again by failing to provide required supervision of students with known violent tendencies per the student's IEP which required a "2 person certified CPI staff," resulting in another assault upon Cockrill through punching, and being struck with a chair, with the end result being Cockrill obtaining emergency medical treatment.

  s. Advising Plaintiff it would respond to her request for transfer/reassignment by February 22, 2013, but actually refusing to respond;

  t. In May 2013, excluding Cockrill from Special Education department emails and school-wide information (i.e. Outlook calendars).

  u. In May of 2013, Metropolitan Nashville Board of Public Education, through Henderson, denied Plaintiff open and available position(s), including English as a Second Language, even though Plaintiff timely requested such transfer and is qualified for such position (i.e has 15 years experience with the District, is certified/endorsed in both English and a Second Language and Secondary English); and

  v. Constructively discharging Plaintiff from active work through a hostile environment of physical assaults, lack of assistance, refusal to communicate, and leaving her on

Page 8

Case 3:13-cv-00587 Document 1 Filed 06/14/13 Page 8 of 10 PageID #: 8

paid leave so that it will not have to address her ongoing concerns for students;

17. Despite Cockrill's repeated requests to return to work, Metropolitan Nashville Board of Public Education has kept Cockrill on inactive duty instead of being placed on active duty in open and available jobs—further retaliation for her protected activities on behalf of students with disabilities. Although she is technically paid while on leave, she is denied active work, denied the opportunity to use her skills, and is being kept out of the school system by Metropolitan Nashville Board of Public Education. As a result, Metropolitan Nashville Board of Public Education has purposefully sidelined and humiliated an educator and denied students her skills and abilities.

18. The retaliation has caused Cockrill emotional injury, harm, trauma, embarrassment, anxiety, and damage to her reputation for which she is entitled to compensatory damages.

19. As a consequence of the retaliatory acts, Cockrill is entitled to, and seeks, injunctive and other equitable relief from both Defendants, including (a) reinstatement to an appropriate position; (b) non-retaliation for reporting Metropolitan Nashville Board of Public Education's non-compliance with Section 504 and the ADA. She is entitled to, and seeks, punitive damages from Defendant Henderson for her callous or reckless indifference to Plaintiff's Constitutional rights.

20. Cockrill seeks her reasonable attorneys fees from Defendants.

### III. LEGAL CAUSES OF ACTION

21. Based upon the foregoing, incorporate herein, Plaintiff brings the following causes of action against Defendant Metropolitan Nashville Board of Public Education:

A. <u>Retaliatory Under §504 of the Rehabilitation Act, 29 U.S.C. §794;</u>

B. <u>Retaliation Under Title II of the ADA; and</u>

C. <u>Retaliation Under the First Amendment to the Constitution and Section 1983</u>.

22. Based upon the foregoing, incorporate herein, Plaintiff brings the following causes of action against Defendant Henderson:

A. <u>Retaliation Under the First Amendment to the Constitution and Section 1983</u>.

23. Plaintiff demands a jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests Defendants Answer this Complaint and that Plaintiff be Awarded damages to include pain and suffering and/or humiliation/embarrassment or other compensatory damages, all actual monetary losses, and her reasonable attorneys fees and costs, along with punitive damages as appropriate.

Respectfully submitted,

**GILBERT RUSSELL McWHERTER PLC**

/s Justin S. Gilbert  
Justin S. Gilbert (TN Bar No. 017079)  
Jessica F. Salonus (TN Bar No. 28158)  
101 North Highland Avenue  
Jackson, Tennessee 38301  
Telephone: 731-664-1340  
Facsimile: 731-664-1540  
jgilbert@gilbertfirm.com  
jsalonus@gilbertfirm.com

*ATTORNEYS FOR PLAINTIFF*